# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISCTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| KAOH Media Enterprises, LLC, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | NOTICE OF REMOVAL |
| v. | ) | |
| | ) | |
| OLIVIA ROSING, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| OLIVIA ROSING, on behalf of herself | ) | |
| and all others similarly situated | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAOH Media Enterprises, LLC, | ) | |
| KELLY O'NEILL, and ALLAN HUG | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| _____ | ) | |

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant and Counterclaimant Olivia Rosing, on behalf of herself and all others similarly situated, removes this action from the Circuit Court of St. Louis County, Missouri to the United States District Court for the Eastern District of Missouri, Eastern Division. Defendant's Notice of Removal is based upon and supported by the following:

1. This case arises out of an employment relationship between Rosing and KAOH Media Enterprises, LLC. KAOH Media Enterprises, LLC, and its principals,

individual Counter-Defendants Kelly O'Neill and Allan Hug, are residents of Missouri. Defendant and Counterclaimant, Olivia Rosing, is a resident of Louisiana.

2.      On September 19, 2022, Plaintiff KAOH Media Enterprises, LLC, filed a contract action arising out of the same facts and employment relationship in the Circuit Court of St. Louis County, State of Missouri, Case Number 22SL-CC04096 (the State Court Action).

3.      Not knowing of the pending case in Missouri, on September 21, 2022, Olivia Rosing filed a lawsuit in the United States District Court for the Eastern District of Louisiana alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., Case Number 2:22-cv-03403.

4.      On November 22, 2022, Defendant Rosing filed an Answer and Counterclaim on behalf of herself and all those similarly situated that alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., as a collective and/or putative class action in the State Action. This Answer and Counterclaim is attached to this Notice as Exhibit A.

5.      Also on November 22, 2022, Defendant Rosing filed a Notice to the Circuit Court of Removal of the action.

6.      Also on November 22, 2022, Defendant Rosing caused this Notice of Removal to be filed within the time frames proscribed by 28 U.S.C. § 1446 because it was filed within one business day of the pleadings that create a Federal Question in the action.

7.      Pursuant to 28 U.S.C. § 1446, copies of all process, pleadings, and orders served in the State Court Action are attached to this Notice as Exhibit B. Exhibit B includes a copy of the docket and all docket items, Numbers 1 through 8.

8.     This Court has jurisdiction over the Federal Question (the claims under the Fair Labor Standards Act) pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state claims (arising from contract) pursuant to 28 U.S.C. § 1367(a).

9.     Venue is proper in this Court because the State Court Action is pending in the Circuit Court of St. Louis County, Missouri, which is in the Eastern District, Eastern Division's jurisdiction. See 28. U.S.C. §§ 1441(a), 1446(a).

10.    On November 22, 2022, Counsel for Defendant has given written notice of its filing of this Notice of Removal via the Circuit Court of St. Louis County's electronic filing system and separately by email.

Respectfully submitted,

November 22, 2022

_Alicia J Dearn_

Alicia I. Dearn, Mo Bar No. 64623
7253 Watson Rd PMB 1164
St. Louis, Missouri 63119
O: (314) 887-1100
F: (314) 887-1101
alicia@dearnlaw.com

Counsel for Plaintiff and Counterclaimant
Olivia Rosing and all others similarly situated

3

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing NOTICE OF REMOVAL was served via the Court's electronic filing system and served via email to the following:

CAPES, SOKOL, GOODMAN & SARACHAN, P.C.
Aaron E. Schwartz
Kelley F. Farrell
8182 Maryland Avenue, Floor 15
St. Louis, Missouri 63105
*schwartz@capessokol.com*
*farrell@capessokol.com*

Attorneys for KAOH Media Enterprises, LLC

s//Alicia I. Dearn                    .

# EXHIBIT A

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KAOH Media Enterprises, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22SL-CC04096 |
| | ) | |
| v. | ) | Div. 13 |
| | ) | |
| OLIVIA ROSING, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER TO PETITION AND COUNTERCLAIM**

COMES NOW Defendant Olivia Rosing ("Defendant" or "Rosing"), by and through its undersigned counsel, and in response to Plaintiff's KAOH Media Enterprises LLC ("Plaintiff" or "KAOH") Petition, answers as follows:

**ANSWER**

1.      Paragraph 1 of Plaintiff's Petition requires no answer from Defendant.

2.      Paragraph 2 of Plaintiff's Petition requires no answer from Defendant.

3.      Paragraph 3 of Plaintiff's Petition is denied.

4.      Paragraph 4 of Plaintiff's Petition is denied in part and admitted in part. Defendant admits that she was employed by KAOH and signed the Agent Agreement dated June 1, 2020. Defendant denies that KAOH treated her as an independent contractor.

5.      Paragraph 5 of Plaintiff's Petition is admitted in that it is the Agent Agreement is executed by both KAOH and Rosing.

6.      Paragraph 6 of Plaintiff's Petition is admitted.

1

7.      Paragraph 7 of Plaintiff's Petition is denied.

8.      Paragraph 8 of Plaintiff's Petition is denied.

9.      Paragraph 9 of Plaintiff's Petition is denied.

10.     Paragraph 10 of Plaintiff's Petition is denied.

11.     Paragraph 11 of Plaintiff's Petition is denied.

12.     Paragraph 12 of Plaintiff's Petition is admitted.

13.     Paragraph 13 of Plaintiff's Petition is denied.

14.     Paragraph 14 of Plaintiff's Petition is denied.

15.     Paragraph 15 of Plaintiff's Petition is denied for lack of sufficient information.

16.     Paragraph 16 of Plaintiff's Petition is denied.

17.     Paragraph 17 of Plaintiff's Petition is admitted.

18.     Paragraph 18 of Plaintiff's Petition is denied.

19.     Paragraph 19 of Plaintiff's Petition is denied.

20.     Paragraph 20 of Plaintiff's Petition is denied.

21.     Paragraph 21 of Plaintiff's Petition is denied.

22.     Paragraph 22 of Plaintiff's Petition denied.

23.     Paragraph 23 of Plaintiff's Petition requires no response of Defendant.

24.     Paragraph 24 of Plaintiff's Petition is admitted to the extent that the quoted paragraphs do appear in the contract; however, Paragraph 24 of Plaintiff's Petition is denied to the extent that it requires a legal conclusion as to the enforceability of any provision of the contract at issue herein.

25.     Paragraph 25 of Plaintiff's Petition is admitted to the extent that Defendant created "work product" for Plaintiff, but is denied to the extent that it states that Defendant has not returned "work product".

26.     Paragraph 26 of Plaintiff's Petition is admitted.

27.     Paragraph 27 of Plaintiff's Petition is denied.

28.     Paragraph 28 of Plaintiff's Petition is denied.

29.     Paragraph 29 of Plaintiff's Petition is denied.

30.     Paragraph 30 of Plaintiff's Petition is denied for lack of sufficient information to justify a belief therein.

31.     Paragraph 31 of Plaintiff's Petition is denied for lack of sufficient information to justify a belief therein.

32.     Paragraph 32 of Plaintiff's Petition requires no response from Defendant.

33.     Paragraph 33 of Plaintiff's Petition is denied.

34.     Paragraph 34 of Plaintiff's Petition is denied.

35.     Paragraph 35 of Plaintiff's Petition is denied.

36.     Paragraph 36 of Plaintiff's Petition is denied for lack of sufficient information to justify a belief therein.

37.     Paragraph 37 of Plaintiff's Petition does not require an answer.  However, out of an abundance of caution, it is denied.

## <u>AFFIRMATIVE DEFENSE TO KAOH'S PETITION</u>

1.     Each and every count or claim set forth within the Petition fails to state sufficient facts to constitute a claim.

2.      The Agent Agreement is void as the contract misclassifies as an independent contractor in violation of both Missouri and Federal public policy.

3.      The Agent Agreement contains unenforceable provisions that are punitive and violate public policy, including, but not limited to, the attorneys' fees and enforcement provisions.

4.      The Agent Agreement does not contain adequate consideration and is a contact of adhesion and is therefore unenforceable.

5.      The conduct of Defendant complained of in the Petition, and each and every claim contained therein, was privileged and justified in that Defendant, in doing the things alleged in the Petition, was asserting her legal rights to engage in the conduct alleged, with a good faith belief in the existence of that right.

6.      If Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that each of Plaintiff's purported causes of action against Defendant are barred by Plaintiff's fraudulent and/or bad faith actions.

7.      That if Plaintiff and Defendant were parties to a contract, said contract by operation of law imposed upon the parties the duty of good faith and fair dealing. Defendant alleges that Plaintiff engaged in acts, omissions, and courses of conduct which constituted a breach of said duty, which breach prevented Defendant from performing its obligations, if any existed, under said contract.

8.      Defendant is informed and believes, and thereon allege, that if Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that Plaintiff is barred from any recovery by reason of the common law doctrine of excuse.

9.      Defendant is informed and believes, and thereon alleges, that if Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that any act or conduct alleged or to be alleged to have been committed by Defendant was justified.

10.     Defendant claims the right to set-off against Plaintiff for the full amount of Plaintiff's claims, or a portion thereof.

11.     Plaintiff has waived its right to assert each and every count or claim contained in the Petition.

12.     Plaintiff is estopped from asserting each and every count or claim contained in the Petition.

13.     Defendant is informed and believes, and thereon alleges, that if Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that each of Plaintiff's purported causes of action against Defendant are barred by Plaintiff's unclean hands.

14.     Plaintiff has failed to exercise reasonable care and diligence to avoid loss and to minimize the damages, if any, that Plaintiff suffered.  Plaintiff has failed to make reasonable efforts or expenditures that could have prevented the losses that Plaintiff has allegedly suffered.

15.     The Petition is barred, in whole or in part, on the ground that Plaintiff would be unjustly enriched if he was allowed to recover certain claimed damages in the Petition.

16.     The equities in this case weigh against the relief Plaintiff seeks.

17.     Plaintiff is not entitled to recovery of attorneys' fees or costs from Defendant as alleged in the Petition.

18.     Plaintiff is not entitled to the requested injunctive relief, or any injunctive or equitable relief, because, among other things: (i) Plaintiff has an adequate remedy at law if they were to succeed in this action, (ii) there is no reasonable likelihood that Plaintiff will prevail on the merits, and/or (iii) Plaintiff cannot show any threat of irreparable harm.

19.     Plaintiff is not entitled to the requested injunctive relief, or any injunctive or equitable relief, because Defendant's alleged wrongful acts on which Plaintiff's claims

for such relief are based have been completed, have voluntarily ceased, and/or are not likely to recur. Plaintiff's prayer for injunctive relief is moot and/or will be by the time this matter is adjudicated.

## PRAYER FOR RELIEF ON PETITION

WHEREFORE, Defendant requests that this Court enter judgment in her favor as follows:

1. That the Petition herein, and each purported count or claim contained therein, be dismissed with prejudice, and that judgment be entered in favor of Defendant;

2. For appropriate credits and set-offs;

3. That Plaintiff takes nothing;

4. That Defendant be awarded her costs of suit;

5. That Defendant be awarded her reasonable attorneys' fees;

6. That Defendant be awarded such other and further relief that the Court may deem just and proper.

## PETITION FOR COUNTERCLAIM

Comes now Olivia Rosing, by and through her attorney, on her behalf and the behalf of all those similarly situated, Counterclaims and alleges as follows:

## PARTIES

1. **KAOH MEDIA ENTERPRISES LLC** (hereinafter "**KAOH**"), a Missouri limited liability company with a principal business address at 533 Palisades Rd., Wildwood, Missouri, is made Defendant in Counterclaim herein, and is justly and truly indebted to Rosing and the Putative Class (as hereinafter defined) for such monies owed for past unpaid overtime wages, damages, penalties, and attorneys' fees as are reasonable,

together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons. KAOH does systematic and continuous business in the State of Missouri, including this judicial district. Furthermore, KAOH is considered an "employer" within the meaning of the FLSA.

2.     **KELLY O'NEILL,** individually, and as owner and managing member of KAOH Media Enterprises LLC, whose address is 533 Palisades Rd., Wildwood, Missouri, is made Individual Defendant herein, and is justly and truly indebted to Rosing and the Putative Class (as hereinafter defined) for such monies owed for past unpaid overtime wages, damages, penalties, and attorneys' fees as are reasonable, together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons. At all times material hereto, **O'NEILL** was an owner and managing member of KAOH Media Enterprises LLC, and in connection therewith:

i.     had the power to hire and fire all employees

ii.     oversaw the human resources function of KAOH

iii.     oversaw disciplinary policy and practices for employees of KAOH

iv.     oversaw financial aspects of the operations of KAOH, including establishing, implementing and enforcing the payroll practices of KAOH

v.     was the "employer" of Rosing and the Putative Class as the term "Employer" is defined in the FLSA.

3.     **ALLAN HUG**, individually and as owner and managing member of KAOH Media Enterprises LLC, whose address is 533 Palisades Rd., Wildwood, Missouri, is made Individual Defendant herein ("Hug," and together with O'Neill, collectively, "Individual Defendants"), and is justly and truly indebted to Rosing and the Putative Class (as hereinafter defined) for such monies owed for past unpaid overtime wages, damages,

penalties, and attorneys' fees as are reasonable, together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons. At all times material hereto, **HUG** was an owner and managing member of KAOH Media Enterprises LLC:

    i.      had the power to hire and fire all employees

    ii.     oversaw the human resources function of KAOH

    iii.    oversaw disciplinary policy and practices for employees of KAOH

    iv.    oversaw financial aspects of the operations of KAOH, including establishing, implementing and enforcing the payroll practices of KAOH

    v.     was the "employer" of Rosing and the Putative Class as the term "Employer" is defined in the FLSA.

4.     **ROSING** is a person of the age of majority. At all relevant times, Rosing was a resident of Orleans Parish, Louisiana. Rosing is no longer an employee of KAOH, as defined in 29 U.S.C. § 201 *et seq*, working previously as a Social Media Assistant for KAOH from approximately March 2, 2020 to June 30, 2022 remotely from her home in Louisiana.

5.     The putative class is comprised of ROSING and all other persons whom KAOH employs or employed as office staff/personnel in the United States that were subject to KAOH's policy of failing to properly compensate for all hours worked and the corresponding overtime pay (the "Putative Class").

**INTRODUCTION**

6.      Rosing and the Putative Class seeks declaratory relief and monetary damages for KAOH and Individual KAOH's willful violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et. seq.* (the "FLSA") for engaging in an illegal scheme to avoid paying minimum wage for all compensable hours worked and for overtime pay to its non-exempt office personnel.

**JURISDICTION AND VENUE**

7.      The FLSA, in relevant part, authorizes court actions by private parties to recover damages for violation of the FLSA'a overtime provisions. Jurisdiction is conferred on this court by Section 16(b) of the FLSA, 29 U.S.C. 216(b), and 28 U.S.C. §§ 1331 and 1337.

8.      Venue is proper in Eastern District of Missouri pursuant to 28 U.S.C. §§ 1391(b) and because KAOH does business in this judicial district and the unlawful conduct giving rise to the claims occurred in this judicial district.

9.      At all relevant times, KAOH, O'NEIL and HUGG and  have been an "employer" within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d).

10.     At all relevant times KAOH has been an "enterprise" within the meaning of § 3(r) of the FLSA, 29 U.S.C. §2003(r).

11.     At all relevant times, KAOH has engaged in commerce within the meaning of 29 U.S.C. §203(s)(1) because it has employees engaged in commerce.   Further, KAOH has had, and continues to have, an annual gross income of sales made or business done of not less than $500,000.

12.     At all relevant times, Rosing and the Putative Class were employees who were engaged in commerce or in the productions of goods for commerce as required by 29 U.S.C. §206-207.

## FACTS

13.     KAOH is a marketing company that provides marketing and public relations services to its clients.

14.     At all times material hereto, Rosing and the Putative Class were hired by KAOH as personnel to perform the work relating to the marketing services that KAOH rendered to its clients.

15.     KAOH treated Rosing and the Putative Class, as independent contractors that were paid a set amount on a bi-weekly basis, without regard to the number of hours they worked.

16.     KAOH maintained control over Rosing and the Putative Class while working for KAOH by: (i) supervising the work of Rosing and the Putative Class, (ii) controlling the hours during which Rosing and the Putative Class worked, (iii) establishing the employment policies that applied to Rosing and the Putative Class, (iv) controlling how, when, and how much Rosing and the Putative Class were to be paid. Defendant and Individual Defendants benefited financially from the work Rosing and the Putative Class performed while working for KAOH. As employer of the Rosing and the Putative Class, KAOH and the Individual Defendants are responsible for compliance with all of the applicable provisions of the FLSA, as provided in 29 C.F.R. § 791.2(a) and (b).

17.     Neither Rosing nor the Putative Class exercised discretion and independent judgement in the performance of their job duties.

18.    Rosing and the Putative Class provided KAOH's goods or services to KAOH's clients and therefore are not exempt administrative employees as defined in the FLSA.

19.    The job duties of Rosing and the Putative Class did not require invention, imagination, originality, or talent, rather the work primarily depended on intelligence, diligence and accuracy.  For example, the content Rosing developed was in strict conformance with the KAOH client's brand guidelines and other specifications provided to her by KAOH and or KAOH's client.  Therefore, neither Rosing nor the Putative Class are exempt from the FLSA as creative professionals.

20.    At all relevant times, Rosing and the Putative Class received no overtime compensation from KAOH despite regularly working hours in excess of 40 hours per week.

21.    KAOH's misclassification of Rosing and the Putative Class as independent contractors or exempt employees was designed to deny Rosing and the Putative Class their fundamental rights as nonexempt employees entitled to receive overtime wages to the detriment of KAOH's profits, from which Hugg and O'Neill benefited financially.

22.    KAOH employed guidelines and rules dictating the way in which Rosing and the Putative Class were to conduct themselves while working for KAOH. Defendant set the hours of operation, the number of hours per week Rosing and the Putative Class was required to work, and all other terms and conditions of employment.

23.    KAOH required that Rosing and the Putative Class work 40 hours each week and regularly gave projects and tasks that required completion in excess of a 40 hour a week schedule.

24.     Rosing and the Putative Class did not exercise the business skills necessary to elevate their status to that of an independence contractor or exempt employee.

25.     Rosing owned no enterprise and worked for no other employers during her time employed at KAOH.

26.     Rosing and the Putative Class did not exert control over a meaningful part of KAOH's business and did not stand as a separate economic entity from KAOH. KAOH exercised control over all aspects of the working relationship between Rosing and the Putative Class, KAOH and KAOH's clients.

27.     KAOH had complete control over the conditions through which Rosing and the Putative Class were inextricably linked to KAOH. Rosing and the Putative Class were completely dependent on KAOH for her earnings.

28.     KAOH controlled all procurement of clients and work assignments without which the Rosing and the Putative Class could not survive economically. Rosing and the Putative Class had no control over the client procurement process while working for KAOH, nor was they allowed to accept or reject discreet projects.

29.     KAOH created and controlled the client pool, client development and assignments of clients at KAOH, the existence of which dictated the flow of assignment of work to Rosing and the Putative Class by KAOH.

30.     Rosing and the Putative Class could not actively participate in any effort to increase the client base or establish contracting possibilities different from KAOH's client base because KAOH monopolized so much of working time.

31.     Rosing and the Putative Class was not permitted to hire or subcontract other qualified individuals to provide additional services to KAOH or its clients, as an independent contractor in business for themselves would.

32.    KAOH dictated the requirements for hardware and software used by the Rosing and the Putative Class, and additionally required the installation of remote access software onto computer, allowing KAOH to treat Rosing's computer and the computers of the Putative Class as its own.

33.    KAOH managed all aspects of the business operation, including establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff. KAOH took the true business risks.

34.    Neither Rosing nor the Putative Class controlled the key determinants of profit and loss of KAOH's enterprise or her own. Specifically, the Rosing and the Putative Class were not responsible for any aspect of KAOH's on-going business risk. KAOH, as opposed to Rosing or the Putative Class, was responsible for all financing, the payment of wages, and obtaining all appropriate business insurance and licenses.

35.    Neither Rosing nor the Putative Class shouldered risk of loss. KAOH and HUGG and O'NEILL shouldered the risk of loss.

36.    Rosing and the Putative Class were essential to the success of KAOH. The continued success of KAOH depends to an appreciable degree upon her production of work for its clients. In fact, the primary reason KAOH exists is to provide multi-media services to its clients, including social media posting and public relations.

37.    Upon information and belief, all KAOH's actions were willful and not the result of mistake or inadvertence. KAOH was aware that the FLSA applied to its operation of KAOH at all relevant times. KAOH chose to continue to misclassify the Rosing and the Putative Class and withhold payment of overtime wages to enhance its profits.

38.    KAOH hired a replacement for Rosing who is classified as an employee of KAOH, and not as an independent contractor. Additionally, during Rosing's employment

13

with KAOH, two of the four other social media content providers were misclassified as exempt employees.

39.     In the event KAOH's actions were not willful, Rosing and the Putative Class alleges in the alternative that KAOH's actions were negligent.

40.     Rosing and the Putative Class have suffered injury, incurred damage, and financial loss because of KAOH's conduct complained of herein.

## CLASS ALLEGATIONS

41.     Rosing brings this action individually and as a collective action pursuant to 29 U.S.C. § 216(b). All requirements of 29 U.S.C. § 216(b) are satisfied.

42.     The class of employees on behalf of whom Rosing brings this collective action is similarly situated in law and fact.  The former and current employees or independent contractors are similarly situated to Rosing because, inter alia, are/were designated as independent contractors or nonexempt employees, worked and/or controlled by the same management, had/have the same or similar job duties wherever located, worked under similar payroll policies and procedures, worked pursuant to the same general compensation arrangements and are/were subject to the same illegal overtime scheme of intentionally refusing to pay for all hours actually worked and overtime compensation.

43.     The number and identity of other Putative Class members yet to opt-in and consent to be party may be determined from the records of KAOH, and potential Putative Class members may easily and quickly be notified of the pendency of this action.

44.     Rosing can and will fairly and adequately represent the interest of other opt in persons.

14

45.     These similarly situated employees should be notified of, and allowed to opt in to, this action pursuant to 29 U.S.C. §216(b) for purposes of adjudicating their claims.

46.     The relevant period dates back three years from the date on which this Petition was filed and continues forward through the date of judgment. In the event the Court finds that KAOH's actions were not willful, then the relevant time period is two years from the date on which this Petition was filed and continues forward through the date of judgment.

47.     Rosing and the undersigned counsel are adequate representatives of the Putative Class. Rosing is a member of the Putative Class. Given Rosing's losses, she has an incentive to represent the Putative Class and is committed to the prosecution of this action for the benefit of the Putative Class. Rosing has no interests that are antagonistic to those of the Putative Class nor that would cause her to act adversely to the best interests of the Putative Class. Rosing has retained counsel experienced in class action litigation, including wage and hour disputes.

48.     Prosecution of separate actions by individual members of the Putative Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Putative Class, which would establish incompatible standards of conduct for KAOH.

49.     KAOH has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate for all members of the Putative Class that choose to opt into the collective action. The challenged practices are ongoing and KAOH continues to refuse to comply with the law.

50.     Questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class. A collective action is superior to other methods for the fair and equitable adjudication of this action.

## COUNT ONE

## VIOLATIONS OF THE FLSA

## (MISCLASSIFICATION AND FAILURE TO PAY OVERTIME)

51.     Rosing and the member of the Putative Class repeat, reiterate, and reallege each and every allegation hereinabove, as applicable, with the same force and effect as though the same was herein set forth at length.

52.     Rosing and the Putative Class worked more than 40 hours per week; however, KAOH has failed to pay overtime wages as set forth in 29 U.S.C. § 207.

53.     KAOH failed to pay Rosing and the members of the Putative Class overtime wages throughout the relevant time because KAOH willfully misclassified Rosing and the Putative Class as independent contractors or exempt employees. Furthermore, Rosing and the Putative Class worked as nonexempt employees and were willfully denied overtime pay by KAOH although they often worked more than forty hours per week.

54.     KAOH failed to furnish Rosing and the Putative Class comprehensive statements showing the hours worked and the wages received during any pay period in the relevant time as required by FLSA and the promulgated regulations.

55.     Based on the foregoing, Rosing and the Putative Class seek unpaid overtime wages at the required legal rate for all working hours more than 40 hours per week during the relevant time, liquidated damages, prejudgment interest, attorney's fees and costs and all other costs and penalties allowed by law.

## **PRAYER FOR RELIEF ON COUNTERCOMPLAINT**

WHEREFORE, ROSING, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED PERSONS, REQUESTS THAT THIS HONORABLE COURT:

1.      Judicially recognize this proceeding as a collective action pursuant to § 216(b) of the FLSA and, thereby require KAOH and the Individual Defendants to provide Rosing with the names and addresses of all potential opt-in collective action members who have been employed by KAOH from November 1, 2019 through the present, within the United States;

2.      Approve and authorize the dissemination of notice to all potential collective action members advising them of the nature of this claim and their right to opt in to this lawsuit;

3.      After due proceedings had and the lapse of all legal delays, there be judgment herein in favor of Rosing and the Putative Class against KAOH Media Enterprises LLC, Kelly O'Neill and Allan Hug**,** individually and *in solido*, for such unpaid overtime pay for all compensable hours actually worked, liquidated damages, attorneys fees and costs as allowed by Section 216 (b) of the FLSA, prejudgment and post-judgement interest as provided by law.

4.      Enjoins KAOH its agents, employees, and successors, including Kelly O'Neill and Allan Hug and all other persons in active concert or participation with KAOH, from:

(a)      classifying members of the Putative Class as independent contractors or exempt employees instead of as nonexempt employees;

(b)      failing to pay members of the Putative Class overtime wages as required under the FLSA;

17

(c)    failing to provide the Putative Class with comprehensive statements showing the hours that they worked and the wages they received.

5.    For damages, general and specific;

6.    For liquidated damages;

7.    For penalties and exemplary damages;

8.    For costs of suit;

9.    For reasonable attorneys' fees;

10.   For such other and further relief that the Court may deem just and proper.

## JURY TRIAL DEMANDED

PLEASE TAKE NOTICE THAT Defendant and Counterclaimant, on behalf of herself and all others similarly situated, hereby demands a trial by jury.

Respectfully submitted,

November 22, 2022

_Alicia J Dearn_

Alicia I. Dearn, Mo Bar No. 64623
7253 Watson Rd PMB 1164
St. Louis, Missouri 63119
O: (314) 887-1100
F: (314) 887-1101
alicia@dearnlaw.com

Counsel for Plaintiff and Counterclaimant
Olivia Rosing and all others similarly situated

18

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing ANSWER TO PETITION AND COUNTERCLAIM was served via the Court's electronic filing system on the following:

Aaron E. Schwartz
Kelley F. Farrell
8182 Maryland Avenue, Floor 15
St. Louis, Missouri 63105
*schwartz@capessokol.com*
*farrell@capessokol.com*

Attorneys for KAOH Media Enterprises, LLC

s//Alicia I. Dearn             .

# EXHIBIT B




**Your Missouri Courts**

Search for Cases by: Se ect Search Method...

Judicial Links ⌄  |  eFiling ⌄  |  Help ⌄  |  Contact Us  |  Print      GrantedPublicAccess  Logoff ALICIADEARN

**22SL-CC04096 - KAOH MEDIA ENTERPRISES, LLC V OLIVIA ROSING (E-CASE)**

| Case FV Head | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ○ Descending  ● Ascending    Display Options: [A  Entr es ⌄]

---

**09/19/2022**  ☐ **Judge Assigned**

DIV 13

☐ **Pet Filed in Circuit Ct**

Petition; Exhibit A.
    **Filed By:** KELLEY FIELD FARRELL
    **On Behalf Of:** KAOH MEDIA ENTERPRISES, LLC

☐ **Filing Info Sheet eFiling**
    **Filed By:** KELLEY FIELD FARRELL

**09/21/2022**  ☐ **Request Filed**

Request for Issuance of Summons and Appointment of Special Process Server.
    **Filed By:** KELLEY FIELD FARRELL
    **On Behalf Of:** KAOH MEDIA ENTERPRISES, LLC

☐ **Motion Special Process Server**

request for appointment of special process server.

**09/22/2022**  ☐ **Judge/Clerk - Note**

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 22-SMOS-852, for ROSING, OLIVIA. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**09/28/2022**  ☐ **Cert Serv Req Prod Docs Things**

Certificate of Service; Electronic Filing Certificate of Service.
    **Filed By:** AARON ELLIOTT SCHWARTZ
    **On Behalf Of:** KAOH MEDIA ENTERPRISES, LLC

**10/13/2022**  ☐ **Memorandum Filed**

Court Memorandum; Return of Service - Olivia Rosing.
    **Filed By:** KELLEY FIELD FARRELL
    **On Behalf Of:** KAOH MEDIA ENTERPRISES, LLC

---

| 10/14/2022 | ☐ | **Entry of Appearance Filed** |
|---|---|---|

Entry of Appearance; Electronic Filing Certificate of Service.

**Filed By:** ALICIA IRENE DEARN

**On Behalf Of:** OLIVIA ROSING

**22SL-CC04096**

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KAOH Media Enterprises, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. |
| | ) | |
| v. | ) | Div. |
| | ) | |
| OLIVIA ROSING, | ) | |
| | ) | |
| Serve at:    5321 Chestnut Street | ) | |
| New Orleans, LA 70115 | ) | |
| **HOLD FOR SERVICE** | ) | |
| | ) | |
| Defendant. | ) | |

<u>**PETITION**</u>

COMES NOW Plaintiff KAOH Media Enterprises LLC ("Plaintiff" or "KAOH"), by and through its undersigned counsel, and for its Petition against Olivia Rosing ("Ms. Rosing" or "Defendant") states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    KAOH (pronounced Kay-oh or 'K.O.') is a data-driven integrated marketing and communications firm. It is in the business of providing public relations, public affairs, marketing, advertising, communications, and competitive intelligence services. It drives sensible narratives for clean energy and sustainable infrastructure projects.

2.    KAOH is a Missouri Limited Liability Company with a principal business address at 533 Palisades Rd., Wildwood, Missouri.

3.    Ms. Rosing is an individual and, upon information and belief, resides at 5321 Chestnut Street, New Orleans, Louisiana 70115.

1

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

4.    Ms. Rosing worked for KAOH pursuant to a written independent contractor agreement dated June 1, 2020.

5.    A copy of that agreement (the "Contract") executed by both KAOH and Ms. Rosing is attached and identified as Exhibit A.

6.    The Contract states, in part, "[t]his contract will be governed by and construed in accordance with the laws of the State of Missouri and subject to the jurisdiction of the courts therein."

7.    Ms. Rosing, has therefore, consented to jurisdiction in the state of Missouri.

8.    Additionally, jurisdiction is appropriate in Missouri because Ms. Rosing made a contract in Missouri, engaged in business with an entity located in Missouri, and performance of the contractual obligations at issue in this lawsuit (the return of certain property owned by KAOH) were to take place in Missouri.

9.    Venue is proper pursuant to RSMo. Section 508.010.2(4) because there is no count alleging a tort and Ms. Rosing is not a resident of Missouri.

10.    The amount in controversy in this action is more than $25,000 but less than $75,000.

**ALLEGATIONS COMMON TO ALL COUNTS**

11.    KAOH hired Ms. Rosing as an independent contractor to perform certain marketing projects.

12.    Ms. Rosing received a set monthly compensation of $5,000 in addition to other sums.

13.    Ms. Rosing missed numerous deadlines on her projects, was non-responsive, and disappeared for periods of time.

14.    Despite her actions and her failure to complete assignments which she had agreed to complete, KAOH still paid her per the Agreement.

15.    Ms. Rosing was paid $69,700 in 2021.

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

16.     Ms. Rosing worked fewer than 40 hours per week during each week she worked for KAOH.

17.     Under Section 12 of the Contract as well as the applicable common law, KAOH is the owner of the work product Ms. Rosing produced under the Agreement.

18.     Since her termination, KAOH has made numerous requests for Ms. Rosing to upload her final work product to KAOH's cloud storage. She has refused to do so.

19.     Ms. Rosing failed to return KAOH's digital assets as requested.

20.     Ms. Rosing failed to return the art files of KAOH, which are its property, although repeatedly requested to do so.

21.     Ms. Rosing's failure to abide by her Agreement has damaged KAOH.

22.     Section 13.6 entitles KAOH to its attorneys' fees for enforcing these straightforward provisions of the Agreement.

## COUNT I – BREACH OF CONTRACT

23.     KAOH adopts and incorporates paragraphs 1 – 22  as if fully set forth herein.

24.     The Contract contains the following provisions:

> **11. TERMINATION**. Upon termination of this Agreement, Agent [Ms. Rosing] will…immediately transfer to Company [KAOH] all of Agents' right, title and interest in and to completed and uncompleted Services, books, papers, records, emails, plans, specifications, drawings, surveys, databases, schedules, username/password credentials, and all other items produced in connection with the performance of the Services by Agent…

> **12. OWNERSHIP OF WORK PRODUCT**. All Work Products, as defined below, produced by Agent hereunder shall be considered work(s) for hire for Company and shall belong exclusively to Company. If by operation of law any Work Product, including all related intellectual property rights, is not owned in its entirety by Company automatically upon creation thereof, then Agent agrees to assign, and hereby assigns, the Work Product exclusively to Company or its nominee, and such Work Product shall become automatically the

3

sole property of Company or its nominee. This assignment of Work Product applies to all Work Product whatsoever, with the exception of work developed entirely on Agent's own time, unless (i) the Work Product relates directly to the business of Company or to Company's actual or demonstrably anticipated research or development; (ii) herein, the term "**Work Product**" shall mean all work performed by Agent for Company including, but not limited to data, documentation, processes, strategies, tactics, designs, writings, websites, emails, social media, software and information developed by Agent pursuant to this Agreement. No Work Product produced by Agent under this Agreement shall infringe the copyrights and any other rights of any third party under the intellectual property laws of the United States, any state, or any foreign country.

\* \* \*

**13.6 <u>Governing Law</u>. . .** In the event Company is required to enforce or preserve its rights, hereunder, Agent shall pay all of Company's reasonable attorney's fees and costs incurred in connection with such successful action.

25.    Ms. Rosing created "work product," as that term is used by the Contract, for KAOH that has not been returned to KAOH.

26.    KAOH terminated Ms. Rosing on or about June 30, 2022.

27.    Ms. Rosing willfully failed and refused to immediately transfer to KAOH all of Ms. Rosing's right, title and interest to completed and uncompleted services, books, papers, records, emails, plans, specifications, drawings, surveys, databases, schedules, username/password credentials, and all other items produced in connection with the performance of the services by Ms. Rosing.

28.    Ms. Rosing continues to fail and refuse to immediately transfer to KAOH all of Ms. Rosing's right, title and interest completed and uncompleted services, books, papers, records, emails, plans, specifications, drawings, surveys, databases, schedules, username/password credentials, and all other items produced in connection with the performance of the services by Ms. Rosing.

29.    The materials retained by Ms. Rosing but not yet returned are valuable to KAOH.

30.    KAOH has been damaged by the failure to return said materials.

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

31.    KAOH has incurred, and will continue to incur, reasonable attorneys' fees and costs to enforce or preserve its rights under the Contract.

## COUNT II – INJUNCTIVE RELIEF

32.    KAOH adopts and incorporates paragraphs 1 – 31 as if fully set forth herein.

33.    The contract provides in the event of actual or threatened breach or infringement of KAOH's intellectual property rights in any Confidential Information or Offerings, and in addition to any other remedies available at law or in equity, KAOH may seek immediate injunctive and other equitable relief, without necessity of posting bond, or having to show actual damage or irreparable harm.

34.    Ms. Rosing breached the contract by failing to return material after the Contract was terminated.

35.    KAOH has no adequate remedy at law to prevent the ongoing deprivation of its property and potential misuse of the same.

36.    The harm to KAOH in not granting an injunction outweighs any harm to Ms. Rosing in granting the same.

37.    KAOH seeks an injunction ordering Ms. Rosing to return to KAOH completed and uncompleted services, books, papers, records, emails, plans, specifications, drawings, surveys, databases, schedules, username/password credentials, and all other items produced in connection with the performance of the services by Ms. Rosing including its work product.

WHEREFORE, Plaintiff prays for judgment against Defendant for damages, attorneys' fees, costs, other relief available at law, and injunctive relief as is described in greater detail above, and for such other and further relief as the Court deems just and proper in the circumstances.

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

Respectfully Submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: _/s/ Kelley F. Farrell_
Kelley F. Farrell, #43027
Aaron E. Schwartz, #58745
8182 Maryland Avenue, Fifteenth Floor
St. Louis, MO 63105
Phone: 314-721-7701
Fax: (314) 721-0554
farrell@capessokol.com
schwartz@capessokol.com

***Attorneys for KAOH Media Enterprises, LLC***

22SL-CC04096

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

### AGENT AGREEMENT

This Agent Agreement (the "Agreement") is entered into this 1st day of June 2020, taking effect immediately by and between KAOH Media Enterprises, a Missouri limited liability company with a principal address at 275 Surf Lane, Pacific, MO 63069 (the "Company"), and Olivia Rosing, an individual with a principal address at 5321 Chestnut Street, New Orleans, LA 70115. (the "Agent") (each a "Party" and collectively the "Parties").  This Agreement takes the place of, and supersedes, all prior Agreements written or verbal.

**WHEREAS**, Company is in the business of providing public relations, public affairs, marketing, advertising, communications, and competitive intelligence services to various companies and industries; and

**WHEREAS**, Company retains agents to help the Company fulfill Customer Orders; and

**WHEREAS**, the Parties are entering into this Agreement to establish a non-exclusive relationship under which the Agent will earn compensation for participating in, and executing duties pertinent to Company business.

**NOW, THEREFORE**, in consideration of the promises and mutual covenants contained herein and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

1. **DEFINITIONS.**

    1.1 "Contract" shall mean an executed Services Agreement between Company and a Customer.

    1.2 "Customer" shall mean an organization that has executed, or that has indicated interest in executing, a Contract with Company.

    1.3 "Customer Order" shall mean a Customer's purchase of offerings furnished by Company.

    1.4 "Offerings" shall mean services provided by the Company.

    1.5 "The Brand" shall mean the name and logo of KAOH Media, which shall be the prevailing name on all work.  This to include, but not be limited to, email addresses, portfolios, reports, storage clouds, websites, social media channels, etc., unless otherwise stated by Company.

2. **SCOPE**. This Agreement applies to all services provided by Agent to Company hereunder.  Agent agrees to:



Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

2.1    Be responsive during regular business hours defined as 8am-5pm Central Standard Time.

2.2    Perform all work under The Brand.

2.3    Represent The Brand in good taste and professional manner.

2.4    Follow instruction as provided.

2.5    Participate in scheduled conference calls as needed.

2.6    Block out approximately 40 hours weekly to perform various tasks on behalf of Company.

2.7    Pay for, and maintain a mobile phone, personal computer, and high-speed Internet service.

**3.    APPOINTMENT AND AUTHORITY OF AGENT.**

3.1    <u>Non-exclusive Agent.</u>    Subject to the terms and conditions herein, Company appoints Agent as Company's non-exclusive agent for helping fulfill Customer Orders, and Agent accepts such appointment. Agent shall use its best efforts to execute Offerings indicated by Company. Agent acknowledges and agrees that Company shall have the right to appoint additional agents as Company sees fit.

3.2    <u>Assignment of Customers</u>. Specific Customer(s) who has/have executed a Contract with Company will be assigned to Agent. Agent shall perform all of the obligations to such Customer(s) on terms agreed to by Company and Agent as set forth in this Agreement

3.3    <u>Agent Limited Authority</u>. Agent does not have the authority to execute Contracts on Company's behalf. Agent shall have no authority to approve or modify a Contract, nor to make promises or concessions to a Customer ancillary to a Contract.

3.4    <u>Independent Contractors</u>. The relationship of the Parties established by this Agreement is that of independent contractor, and nothing contained in this Agreement shall be construed to (i) give either Party the power to direct or control the day-to-day activities of the other, or (ii) constitute the Parties as partners, joint venturers, co-owners or otherwise as participants in a joint undertaking, or (iii) allow Agent to create or assume any obligation on behalf of Company for any purpose whatsoever, except for the right to execute obligations set forth herein. All financial and other obligations associated with Agent's business are the sole responsibility of Agent. Agent shall be responsible for, and shall indemnify and hold Company free and harmless from, any and all claims, damages or lawsuits (including Company's attorneys' fees) arising solely out of the acts of Agent.

Agent shall not be entitled to any benefits provided by Company, and Company will make no deductions from any of the payments due to Agent hereunder to pay any governmental agency or

2

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

authority, except as may otherwise be required by law.  Agent agrees that Agent shall be personally responsible for any and all taxes and other payments due on payments received by him/her from Company.

4.  **COMPENSATION.**

    4.1    <u>Base Compensation</u>.  Agent's compensation under the terms of this Agreement shall be five-thousand dollars ($5000.00) per month, commencing according to Section 4.3 below.  Company will compensate Agent bi-monthly, paying ½ of the monthly rate on the 15th of each calendar month, and ½ of the monthly rate on the final day of each calendar month.  Should the 15th or final day of the calendar month fall on a weekend or Holiday, Agent will be paid on the nearest business day prior to.

    4.2    <u>Basis of Compensation</u>.  Agent is to be compensated according to Company sustaining its current volume of Contracts.  Should the volume of Contracts increase, and Agent be willing to take on more work, additional compensation may be awarded.  Should the volume of Contracts decrease, Company will inform Agent promptly and both parties will work to renegotiate compensation accordingly.

    4.3    <u>Bonus Compensaton</u>.  As an incentive to Agent, Company agrees to pay a quarterly bonus of one-thousand eight-hundred dollars ($1,800.00) to Agent on the last day of each calendar quarter, providing that Customer Contracts designated and assigned to Agent by Company remain intact, good standing and working order.

    4.4    <u>Initial Payment</u>.  Company aims to issue Initial Payment, per Section 4.1 above, on June 15th, 2020, with the first eligible quarterly bonus payment starting on June 30, 2020, which will be prorated for the second quarter.

    4.5    <u>Final Payment</u>.  Upon termination of this Agreement, Company and Agent mutually agree to either pay or reimburse the owed party on a pro-rata basis.

5.  **OBLIGATIONS OF COMPANY.**

    5.1    <u>Training and/or Instruction by Company</u>.  Company shall provide training and/or instruction to Agent initially, and at periodic intervals as needed.

    5.2    <u>Databases, Intelligence and Software.</u>  Company shall provide Agent with access to cloud-based databases, critical information pertinent to Offering, and credentialed access to necessary applications.

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

5.3 <u>New Developments.</u> Company shall promptly inform Agent of new developments relating to Contracts, Customers, Customer Orders, and/or Offerings.

6. **<u>TRADEMARKS/INTELLECTUAL PROPERTY.</u>** During the term of this Agreement, unless otherwise instructed by Company, Agent is encouraged to indicate to the public that it is an authorized representative of Company.  Agent may use Company trademarks, marks, tradenames and logo designs affiliated with the Company, unless that any usage of any Company mark or tradename, in each instance, has been denied in writing in advance by Company.  Agent acknowledges and agrees that: (i) the Trademarks are owned by Company; (ii) it will do nothing inconsistent with such ownership; (iii) all use of the Trademarks by it will inure to the benefit of and be on behalf of Company; (iv) that nothing in this grant gives it any right, title or interest in the Trademarks; and (v) further agrees not to use any other trademark or service mark in combination with any of Company's Trademarks without the prior written approval of Company. Upon termination of this Agreement, any permission or right to use the Trademarks granted hereunder will cease to exist and Agent will immediately cease any use of the Trademarks and immediately cease referring to itself as an Agent of Company.

7. **<u>CONFIDENTIAL INFORMATION.</u>**

7.1 <u>Acknowledgment of Confidentiality</u>.  Agent acknowledges that all information exchanged to date, including this Agreement, is to be considered Confidential Information. Confidential Information does not include (i) information which the Agent can demonstrate was already known or independently developed by it; (ii) information in the public domain through no wrongful act of the Agent, or (iii) information received by the Agent from a third party who was free to disclose it.

7.2 <u>Covenant Not to Disclose</u>**.** Agent will not use or commercialize Company's Confidential Information or disclose it to any person or entity. Agent shall use at least the same degree of care in safeguarding Company's Confidential Information as it uses in safeguarding its own Confidential Information, but not less than due diligence and care. Agent will not alter or remove from the Confidential Information any proprietary, or trade secrets.

7.3 <u>Time Period</u>**.** Agent will protect Company's Confidential Information of a technical nature in perpetuity and will protect business, financial and other non-technical Confidential Information during the Term of this Agreement and for three (3) years thereafter.

7.4 <u>Injunctive Relief</u>**.** In the event of actual or threatened breach or infringement of Company's intellectual property rights in any Confidential Information or Offerings, and in addition to any other remedies available at law or in equity, Company may seek immediate injunctive and other equitable relief, without necessity of posting bond, or having to show actual damage or irreparable harm.

4

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

8. **CERTAIN BUSINESS PRACTICES PROHIBITED**

    8.1    <u>Non-Solicitation</u>.  During the term of this Agreement and for three (3) years thereafter, Agent shall not, directly or indirectly, without Company's prior written consent, hire, solicit or attempt to provide services to any Customer, prospective Customer, other Agent, associate, or employee of Company.

    8.2    <u>Non-Circumvention</u>.  Company has expended considerable time, effort and resources to develop its Offerings. The Agent hereby agrees for herself/himself, including her/his officers, directors, agents, associates and any related third party intern or contracted associate, that they will not, directly or indirectly, contact, deal with or otherwise become involved with any entity or any other mutually known entities or parties introduced by Company, and not directly or indirectly, by or through the other party, its officers, directors, agents or associates, share Company confidential information or production, technologies, media, strategies, designs or plans for the purpose of engagement with a known or unknown entity for payment or profit, fees or otherwise, without the specific written approval or authority granted by the Company during this agreement and for three (3) years thereafter.

9. **OBLIGATION OF NON-COMPETITION.** The non-competition provisions of this Agreement is an essential and material part of the total Agreement, by which the Agent agrees it shall not use any advantages derivable from such confidential information, concepts or production in its own business or affairs, unless it is agreed to under a new document and executed by all signatories to this document.  This obligation of non-compete shall remain in effect for (3) years after termination of this Agreement.

10.  **LIMITATION OF LIABILITY.**  COMPANY'S LIABILITY IN CONTRACT, TORT OR OTHERWISE SHALL NOT EXCEED THE AMOUNTS RECEIVED FROM AGENT BY COMPANY UNDER THIS AGREEMENT.

11. **TERMINATION.**  Upon termination of this Agreement, Agent will: (i) immediately discontinue all Services as of the effective date of such termination; (ii) immediately transfer to Company all of Agents's right, title and interest in and to completed and uncompleted Services, books, papers, records, emails, plans, specifications, drawings, surveys, databases, schedules, username/password credentials, and all other items produced in connection with the performance of the Services by Agent; and (iii) Company will pay to Agent all amounts owed by Company through the effective date of termination in accordance with this Agreement. Company will not be liable for lost or anticipated profits on any unperformed portion of the Services as a result of the termination of this Agreement or any Task Order. Any restrictions set forth herein, shall survive any expiration, termination, or cancellation of this Agreement. The right of termination of this Agreement is absolute.  Agent waives any claim to the contrary and releases the Company from any claim to damages, compensation or indemnification arising out of or relating to the termination of this business relationship.

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

**12**. **OWNERSHIP OF WORK PRODUCT**.  All Work Products, as defined below, produced by Agent hereunder shall be considered work(s) for hire for Company and shall belong exclusively to Company. If by operation of law any Work Product, including all related intellectual property rights, is not owned in its entirety by Company automatically upon creation thereof, then Agent agrees to assign, and hereby assigns, the Work Product exclusively to Company or its nominee, and such Work Product shall become automatically the sole property of Company or its nominee. This assignment of Work Product applies to all Work Product whatsoever, with the exception of work developed entirely on Agent's own time, unless (i) the Work Product relates directly to the business of Company or to Company's actual or demonstrably anticipated research or development; (ii) herein, the term "**Work Product**" shall mean all work performed by Agent for Company including, but not limited to data, documentation, processes, strategies, tactics, designs, writings, websites, emails, social media, software and information developed by Agent pursuant to this Agreement. No Work Product produced by Agent under this Agreement shall infringe the copyrights and any other rights of any third party under the intellectual property laws of the United States, any state, or any foreign country.

**13. MISCELLANEOUS**

13.1    Assignment.  Agent shall not assign, sell, transfer, delegate or otherwise dispose of, whether voluntarily or involuntarily, or by operation of law, any rights or obligations under this Agreement.  Any purported assignment, transfer or delegation by Agent shall be null and void.

13.2    Compliance with Law.    Agent agrees that in carrying out her/his duties and responsibilities under this Agreement, she/he will neither undertake nor cause, nor permit to be undertaken, any activity which either (i) is illegal under any laws, decrees, rules, or regulations in effect in either the United States or any other country in which the Company has a business interest; or (ii) would have the effect of causing the Company to be in violation of any laws, decrees, rules, or regulations in effect in either the United States or any other country in which the Company has a business interest.

13.3    Severability.  If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the validity or enforceability of the other provisions shall not be affected.

13.4    Modification/Waiver.  Customer Orders, Contracts, invoices or other transactional documents may be issued for administrative purposes.  However, any terms in these documents will not supplement, waive or contradict the terms of this Agreement.  This Agreement may not be altered, amended or modified in any way except by a writing signed by both Parties. The failure of a Party to enforce any provision of the Agreement shall not be construed to be a waiver of the right of such Party to thereafter enforce that provision or any other provision or right.

13.5    Entire Agreement.  This Agreement sets forth the entire understanding between the Parties with respect to the subject matter hereof, and there are no terms, conditions, representations, warranties or covenants other than those contained herein.  This Agreement

Electronically Filed - St Louis County - September 19, 2022 - 03:07 PM

supersedes any previous agreements or understandings between the Parties with respect to the subject matter hereof, whether written or oral.

    13.6    <u>Governing Law</u>. This contract will be governed by and construed in accordance with the laws of the State of Missouri and subject to the jurisdiction of the courts therein, without giving effect to its conflicts of laws rules.  In the event Company is required to enforce or preserve its rights hereunder, Agent shall pay all of Company's reasonable attorney's fees and costs incurred in connection with such successful action.

    13.7    <u>Notices</u>.  Any notice to be given hereunder shall be in writing and shall either be served upon a Party personally, or served by registered or certified mail, return receipt requested, directed to the Party to be served at their respective address stated on the first page of this Agreement. Notice served by mail shall be deemed complete when deposited in the United States mail, postage prepaid.  A Party wishing to change its designated address shall do so by notice in writing to the other Party.  Rejection or other refusal to accept notice, or the inability to deliver notice because of changed address of which no notice was given, shall be deemed to be receipt of the notice.

    13.9    <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

KAOH Media Enterprises LLC:

By: _____

Name (print): __Allan Hug_____

Title: ___Co-Founder/CEO_____

_____Olivia Rosing_____, Agent, an individual:

By: _Olivia Rosing_

Name (print):_Olivia Rosing_____

7

Electronically Filed - St Louis County - September 21, 2022 - 11:10 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KAOH Media Enterprises, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 22SL-CC04096 |
| | ) | |
| v. | ) | Div. 13 |
| | ) | |
| OLIVIA ROSING, | ) | |
| | ) | |
| Serve at:     5321 Chestnut Street | ) | |
| New Orleans, LA 70115 | ) | |
| **HOLD FOR SERVICE** | ) | |
| | ) | |
| Defendant. | ) | |

**REQUEST FOR ISSUANCE OF SUMMONS**
**AND APPOINTMENT OF SPECIAL PROCESS SERVER**

COMES NOW Plaintiff KAOH Media Enterprises, LLC, by and through its undersigned counsel, and hereby requests that the clerk issue a summons, by special process server, upon Plaintiff's Petition directed to Defendant at the following address or wherever else she may be found:

> Olivia Rosing
> 5321 Chestnut Street
> New Orleans, LA 70115

Plaintiff requests the appointment of Darren J. Harper, Harper Limited, 4028 Camphor Street, Marrero, Louisiana 70072, (504) 888-5262, as special process server for service of the summons to Defendant Olivia Rosing.  The Court's appointment of special process server form is attached hereto as Exhibit A.

1

Electronically Filed - St Louis County - September 21, 2022 - 11:10 AM

Respectfully Submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: _/s/ Kelley F. Farrell_
Kelley F. Farrell, #43027
Aaron E. Schwartz, #58745
8182 Maryland Avenue, Fifteenth Floor
St. Louis, MO 63105
Phone: 314-721-7701
Fax: (314) 721-0554
farrell@capessokol.com
schwartz@capessokol.com

***Attorneys for KAOH Media Enterprises, LLC***

In the

# CIRCUIT COURT

## Of St. Louis County, Missouri

KAOH MEDIA ENTERPRISES, LLC
_Plaintiff/Petitioner_

September 21, 2022
Date

22SL-CC04096
Case Number

vs.

OLIVIA ROSING
_Defendant/Respondent_

13
Division

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiff KAOH Media Enterprises, LLC , pursuant
_Requesting Party_
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
Darren J. Harper, Harper Limited,  4028 Camphor Street, Marrero, Louisiana 70072    (505) 888-5262
_Name of Process Server_                         _Address_                                        _Telephone_

_Name of Process Server_                         _Address or in the Alternative_                  _Telephone_

_Name of Process Server_                         _Address or in the Alternative_                  _Telephone_

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:

Olivia Rosing
_Name_
5321 Chestnut Street
_Address_
New Orleans, LA 70115
_City/State/Zip_

SERVE:

_Name_

_Address_

_City/State/Zip_

SERVE:

_Name_

_Address_

_City/State/Zip_

SERVE:

_Name_

_Address_

_City/State/Zip_

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk


By _____
_Deputy Clerk_


_____
_Date_

/s/ Kelley F. Farrell
Signature of Attorney/Plaintiff/Petitioner
43027
Bar No.
8182 Maryland Ave., 15th Floor, St. Louis, MO 63105
Address
(314) 721-7701          (314) 721-0554
Phone No.                    Fax No.

CCADM62-WS   Rev. 08/16

EXHIBIT
A

Electronically Filed - St Louis County - September 21, 2022 - 11:10 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)     Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)     The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)     Appointments may list more than one server as alternates.

(B)     The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)     Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)     No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)     Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com.  (LawandPublicSafety/Circuit/Forms).

(F)     This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - St Louis County - September 21, 2022 - 11:10 AM

**In the**
# CIRCUIT COURT
**Of St. Louis County, Missouri**

┌              ┐
For File Stamp Only

KAOH MEDIA ENTERPRISES, LLC
Plaintiff/Petitioner

September 21, 2022
Date

22SL-CC04096
Case Number

vs.

OLIVIA ROSING
Defendant/Respondent

13
Division

└              ┘

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiff KAOH Media Enterprises, LLC                      , pursuant
                                 Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
Darren J. Harper, Harper Limited,  4028 Camphor Street, Marrero, Louisiana 70072    (505) 888-5262
Name of Process Server                      Address                                      Telephone

Name of Process Server                      Address or in the Alternative                Telephone

Name of Process Server                      Address or in the Alternative                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                       SERVE:
Olivia Rosing
Name                                         Name
5321 Chestnut Street
Address                                      Address
New Orleans, LA 70115
City/State/Zip                               City/State/Zip

SERVE:                                       SERVE:

Name                                         Name

Address                                      Address

City/State/Zip                               City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

                                  /s/ Kelley F. Farrell
                                  Signature of Attorney/Plaintiff/Petitioner
                                  43027
By      **/s/Adam Dockery**                Bar No.
         Deputy Clerk                       8182 Maryland Ave., 15th Floor, St. Louis, MO 63105
           9 / 2 2 / 2 0 2 2                 Address
                                     (314) 721-7701          (314) 721-0554
Date                                         Phone No.                      Fax No.

CCADM62-WS   Rev. 08/16

**EXHIBIT**

**A**

Electronically Filed - St Louis County - September 21, 2022 - 11:10 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com.  (LawandPublicSafety/Circuit/Forms).

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS      Rev. 08/16



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>BRUCE F. HILTON | Case Number:  22SL-CC04096 |
|---|---|
| Plaintiff/Petitioner:<br>KAOH MEDIA ENTERPRISES, LLC | Plaintiff's/Petitioner's Attorney/Address:<br>KELLEY FIELD FARRELL<br>8182 MARYLAND AVE<br>15TH FLOOR<br>ST LOUIS, MO  63105 |
| **vs.** | |
| Defendant/Respondent:<br>OLIVIA ROSING | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  OLIVIA ROSING
                    Alias:

**5321 CHESTNUT STREET**
**NEW ORLEANS, LA  70115**



*COURT SEAL OF*

*ST. LOUIS COUNTY*

      **You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**

      **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>22-SEP-2022</u>
**Date**
**Further Information:**
**AD**

_____
                                 **Clerk**

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
    _____, a person at least 18 years of age residing therein.

    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
    _____ (name) _____ (title).
    ☐ other (describe) _____
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____   _____
      Printed Name of Sheriff or Server              Signature of Sheriff or Server
           **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
      I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                      ☐ the judge of the court of which affiant is an officer.
                      ☐ authorized to administer oaths in the state in which the affiant served the above summons.
    *(Seal)*                    (use for out-of-state officer)
                      ☐ authorized to administer oaths.  (use for court-appointed server)

                              _____
                                       Signature and Title

| **Service Fees, if applicable** | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| **Total** | $_____ | |

*See the following page for directions to clerk and to officer making return on service of summons.*

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

Electronically Filed - St Louis County - September 28, 2022 - 11:27 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KAOH Media Enterprises, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 22SL-CC04096 |
| | ) | |
| v. | ) | Div. 13 |
| | ) | |
| OLIVIA ROSING, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of *Plaintiff KAOH Media Enterprises, LLC's First Request for Production of Documents Directed to Defendant Olivia Rosing* was personally served on September 24, 2022, upon:

> Olivia Rosing
> 5321 Chestnut Street
> New Orleans, LA 70115
>
> *Defendant*

Respectfully submitted,

**Capes, Sokol, Goodman & Sarachan, P.C.**

By:  */s/ Aaron E. Schwartz*
Aaron E. Schwartz, #58745
Kelley F. Farrell, #43027
8182 Maryland Avenue, Floor 15
St. Louis, Missouri 63105
Phone: (314) 721-7701
Fax: (314) 721-0554
Email: schwartz@capessokol.com
Email: farrell@capessokol.com

***Attorneys for KAOH Media Enterprises, LLC***

Electronically Filed - St Louis County - October 13, 2022 - 10:11 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KAOH Media Enterprises, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 22SL-CC04096 |
| | ) | |
| v. | ) | Div. 13 |
| | ) | |
| OLIVIA ROSING, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**COURT MEMORANDUM**

COMES NOW Plaintiff KAOH Media Enterprises, LLC, by and through its undersigned counsel, and files the return of service upon Defendant Olivia Rosing in the above matter.  Please mark date of service as September 24, 2022.

Dated:  October 13, 2022

Respectfully submitted,

**Capes, Sokol, Goodman & Sarachan, P.C.**

By:      */s/ Kelley F. Farrell*
Aaron E. Schwartz, #58745
Kelley F. Farrell, #43027
8182 Maryland Avenue, Floor 15
St. Louis, Missouri 63105
Phone: (314) 721-7701
Fax: (314) 721-0554
Email: schwartz@capessokol.com
Email: farrell@capessokol.com

*Attorneys for KAOH Media Enterprises, LLC*

Electronically Filed - St Louis County - October 13, 2022 - 10:11 AM



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>BRUCE F. HILTON | Case Number: 22SL-CC04096 |
|---|---|
| Plaintiff/Petitioner:<br>KAOH MEDIA ENTERPRISES, LLC<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>KELLEY FIELD FARRELL<br>8182 MARYLAND AVE<br>15TH FLOOR<br>ST LOUIS, MO 63105 |
| Defendant/Respondent:<br>OLIVIA ROSING<br>Nature of Suit:<br>CC Breach of Contract | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105<br><br>(Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: **OLIVIA ROSING**
Alias:

**5321 CHESTNUT STREET**
**NEW ORLEANS, LA 70115**



**COURT SEAL OF**

**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

22-SEP-2022
Date
Further Information:
AD

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _Process Server_ of _Jefferson_ County, _LA_ (state).
3. I have served the above summons by: (check one)
   ☒ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person at least 18 years of age residing therein.

   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to ____ (name) ____ (title).
   ☐ other (describe)

Served at _5321 Chestnut St._ (address)
in _Orleans_ County, _LA_ (state), on _9-24-22_ (date) at _7:00 pm_ (time).

_Darren J. Hargre_
Printed Name of Sheriff or Server

Signature of Sheriff or Server

Subscribed and Sworn To me before this _11TH_ (day) _october_ (month) _2022_ (year)
I am: (check one)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☒ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

(Seal)

Electronically Filed - St Louis County - October 14, 2022 - 11:29 AM

**IN THE  21ST JUDICIAL CIRCUIT  COURT,  ST. LOUIS COUNTY , MISSOURI**

| |
|---|
| Kaoh Media Enterprises, Llc |
|       Plaintiff, |
|                   vs. |
| Olivia Rosing |
|       Defendant. |

Case Number:  22SL-CC04096

## Entry of Appearance

Comes now undersigned counsel and enters his/her appearance as attorney of record for Olivia Rosing, Defendant, in the above-styled cause.

/s/ Alicia I. Dearn
Alicia Irene Dearn
Mo Bar Number: 64623
Attorney for Defendant
7253 Watson Rd #1164
St Louis, MO 63119
Phone Number: (314) 887-1100
notices@dearnlaw.com

### Certificate of Service

I hereby certify that on  October 14th, 2022 , a copy of the foregoing was sent through the Missouri eFiling system to the registered attorneys of record and to all others by facsimile, hand delivery, electronic mail or U.S. mail postage prepaid to their last known address.

/s/ Alicia I. Dearn
Alicia Irene Dearn

OSCA (10-14) GN230                                1  of  1

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY:   KELLEY FIELD FARRELL, Attorney for Plaintiff
SERVICE EMAIL:    farrell@capessokol.com

Electronically Filed - St Louis County - October 14, 2022 - 11:29 AM