IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| KAOH Media Enterprises, LLC, | ) |
| Plaintiff, | ) Case No. 22SL-CC04096 |
| v. | ) Div. 13 |
| OLIVIA ROSING, | ) |
| Defendant. | ) |

## ANSWER TO PETITION AND COUNTERCLAIM

COMES NOW Defendant Olivia Rosing ("Defendant" or "Rosing"), by and through its undersigned counsel, and in response to Plaintiff's KAOH Media Enterprises LLC ("Plaintiff" or "KAOH") Petition, answers as follows:

## ANSWER

1. Paragraph 1 of Plaintiff's Petition requires no answer from Defendant.

2. Paragraph 2 of Plaintiff's Petition requires no answer from Defendant.

3. Paragraph 3 of Plaintiff's Petition is denied.

4. Paragraph 4 of Plaintiff's Petition is denied in part and admitted in part. Defendant admits that she was employed by KAOH and signed the Agent Agreement dated June 1, 2020. Defendant denies that KAOH treated her as an independent contractor.

5. Paragraph 5 of Plaintiff's Petition is admitted in that it is the Agent Agreement is executed by both KAOH and Rosing.

6. Paragraph 6 of Plaintiff's Petition is admitted.

7. Paragraph 7 of Plaintiff's Petition is denied.

8. Paragraph 8 of Plaintiff's Petition is denied.

9. Paragraph 9 of Plaintiff's Petition is denied.

10. Paragraph 10 of Plaintiff's Petition is denied.

11. Paragraph 11 of Plaintiff's Petition is denied.

12. Paragraph 12 of Plaintiff's Petition is admitted.

13. Paragraph 13 of Plaintiff's Petition is denied.

14. Paragraph 14 of Plaintiff's Petition is denied.

15. Paragraph 15 of Plaintiff's Petition is denied for lack of sufficient information.

16. Paragraph 16 of Plaintiff's Petition is denied.

17. Paragraph 17 of Plaintiff's Petition is admitted.

18. Paragraph 18 of Plaintiff's Petition is denied.

19. Paragraph 19 of Plaintiff's Petition is denied.

20. Paragraph 20 of Plaintiff's Petition is denied.

21. Paragraph 21 of Plaintiff's Petition is denied.

22. Paragraph 22 of Plaintiff's Petition denied.

23. Paragraph 23 of Plaintiff's Petition requires no response of Defendant.

24. Paragraph 24 of Plaintiff's Petition is admitted to the extent that the quoted paragraphs do appear in the contract; however, Paragraph 24 of Plaintiff's Petition is denied to the extent that it requires a legal conclusion as to the enforceability of any provision of the contract at issue herein.

25. Paragraph 25 of Plaintiff's Petition is admitted to the extent that Defendant created "work product" for Plaintiff, but is denied to the extent that it states that Defendant has not returned "work product".

26. Paragraph 26 of Plaintiff's Petition is admitted.

27. Paragraph 27 of Plaintiff's Petition is denied.

28. Paragraph 28 of Plaintiff's Petition is denied.

29. Paragraph 29 of Plaintiff's Petition is denied.

30. Paragraph 30 of Plaintiff's Petition is denied for lack of sufficient information to justify a belief therein.

31. Paragraph 31 of Plaintiff's Petition is denied for lack of sufficient information to justify a belief therein.

32. Paragraph 32 of Plaintiff's Petition requires no response from Defendant.

33. Paragraph 33 of Plaintiff's Petition is denied.

34. Paragraph 34 of Plaintiff's Petition is denied.

35. Paragraph 35 of Plaintiff's Petition is denied.

36. Paragraph 36 of Plaintiff's Petition is denied for lack of sufficient information to justify a belief therein.

37. Paragraph 37 of Plaintiff's Petition does not require an answer.  However, out of an abundance of caution, it is denied.

## **AFFIRMATIVE DEFENSE TO KAOH'S PETITION**

1. Each and every count or claim set forth within the Petition fails to state sufficient facts to constitute a claim.

2. The Agent Agreement is void as the contract misclassifies as an independent contractor in violation of both Missouri and Federal public policy.

3. The Agent Agreement contains unenforceable provisions that are punitive and violate public policy, including, but not limited to, the attorneys' fees and enforcement provisions.

4. The Agent Agreement does not contain adequate consideration and is a contact of adhesion and is therefore unenforceable.

5. The conduct of Defendant complained of in the Petition, and each and every claim contained therein, was privileged and justified in that Defendant, in doing the things alleged in the Petition, was asserting her legal rights to engage in the conduct alleged, with a good faith belief in the existence of that right.

6. If Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that each of Plaintiff's purported causes of action against Defendant are barred by Plaintiff's fraudulent and/or bad faith actions.

7. That if Plaintiff and Defendant were parties to a contract, said contract by operation of law imposed upon the parties the duty of good faith and fair dealing. Defendant alleges that Plaintiff engaged in acts, omissions, and courses of conduct which constituted a breach of said duty, which breach prevented Defendant from performing its obligations, if any existed, under said contract.

8. Defendant is informed and believes, and thereon allege, that if Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that Plaintiff is barred from any recovery by reason of the common law doctrine of excuse.

9. Defendant is informed and believes, and thereon alleges, that if Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that any act or conduct alleged or to be alleged to have been committed by Defendant was justified.

10. Defendant claims the right to set-off against Plaintiff for the full amount of Plaintiff's claims, or a portion thereof.

11. Plaintiff has waived its right to assert each and every count or claim contained in the Petition.

12. Plaintiff is estopped from asserting each and every count or claim contained in the Petition.

13. Defendant is informed and believes, and thereon alleges, that if Plaintiff suffered any loss as alleged in the Petition, which Defendant expressly denies, that each of Plaintiff's purported causes of action against Defendant are barred by Plaintiff's unclean hands.

14. Plaintiff has failed to exercise reasonable care and diligence to avoid loss and to minimize the damages, if any, that Plaintiff suffered.  Plaintiff has failed to make reasonable efforts or expenditures that could have prevented the losses that Plaintiff has allegedly suffered.

15. The Petition is barred, in whole or in part, on the ground that Plaintiff would be unjustly enriched if he was allowed to recover certain claimed damages in the Petition.

16. The equities in this case weigh against the relief Plaintiff seeks.

17. Plaintiff is not entitled to recovery of attorneys' fees or costs from Defendant as alleged in the Petition.

18. Plaintiff is not entitled to the requested injunctive relief, or any injunctive or equitable relief, because, among other things: (i) Plaintiff has an adequate remedy at law if they were to succeed in this action, (ii) there is no reasonable likelihood that Plaintiff will prevail on the merits, and/or (iii) Plaintiff cannot show any threat of irreparable harm.

19. Plaintiff is not entitled to the requested injunctive relief, or any injunctive or equitable relief, because Defendant's alleged wrongful acts on which Plaintiff's claims

for such relief are based have been completed, have voluntarily ceased, and/or are not likely to recur. Plaintiff's prayer for injunctive relief is moot and/or will be by the time this matter is adjudicated.

## PRAYER FOR RELIEF ON PETITION

WHEREFORE, Defendant requests that this Court enter judgment in her favor as follows:

1. That the Petition herein, and each purported count or claim contained therein, be dismissed with prejudice, and that judgment be entered in favor of Defendant;
2. For appropriate credits and set-offs;
3. That Plaintiff takes nothing;
4. That Defendant be awarded her costs of suit;
5. That Defendant be awarded her reasonable attorneys' fees;
6. That Defendant be awarded such other and further relief that the Court may deem just and proper.

## PETITION FOR COUNTERCLAIM

Comes now Olivia Rosing, by and through her attorney, on her behalf and the behalf of all those similarly situated, Counterclaims and alleges as follows:

## PARTIES

1. **KAOH MEDIA ENTERPRISES LLC** (hereinafter "**KAOH**"), a Missouri limited liability company with a principal business address at 533 Palisades Rd., Wildwood, Missouri, is made Defendant in Counterclaim herein, and is justly and truly indebted to Rosing and the Putative Class (as hereinafter defined) for such monies owed for past unpaid overtime wages, damages, penalties, and attorneys' fees as are reasonable,

together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons. KAOH does systematic and continuous business in the State of Missouri, including this judicial district. Furthermore, KAOH is considered an "employer" within the meaning of the FLSA.

2.   **KELLY O'NEILL,** individually, and as owner and managing member of KAOH Media Enterprises LLC, whose address is 533 Palisades Rd., Wildwood, Missouri, is made Individual Defendant herein, and is justly and truly indebted to Rosing and the Putative Class (as hereinafter defined) for such monies owed for past unpaid overtime wages, damages, penalties, and attorneys' fees as are reasonable, together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons. At all times material hereto, **O'NEILL** was an owner and managing member of KAOH Media Enterprises LLC, and in connection therewith:

   i.   had the power to hire and fire all employees

   ii.   oversaw the human resources function of KAOH

   iii.   oversaw disciplinary policy and practices for employees of KAOH

   iv.   oversaw financial aspects of the operations of KAOH, including establishing, implementing and enforcing the payroll practices of KAOH

   v.   was the "employer" of Rosing and the Putative Class as the term "Employer" is defined in the FLSA.

3.   **ALLAN HUG**, individually and as owner and managing member of KAOH Media Enterprises LLC, whose address is 533 Palisades Rd., Wildwood, Missouri, is made Individual Defendant herein ("Hug," and together with O'Neill, collectively, "Individual Defendants"), and is justly and truly indebted to Rosing and the Putative Class (as hereinafter defined) for such monies owed for past unpaid overtime wages, damages,

7

penalties, and attorneys' fees as are reasonable, together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons. At all times material hereto, **HUG** was an owner and managing member of KAOH Media Enterprises LLC:

    i.      had the power to hire and fire all employees

    ii.     oversaw the human resources function of KAOH

    iii.    oversaw disciplinary policy and practices for employees of KAOH

    iv.    oversaw financial aspects of the operations of KAOH, including establishing, implementing and enforcing the payroll practices of KAOH

    v.     was the "employer" of Rosing and the Putative Class as the term "Employer" is defined in the FLSA.

    4.     **ROSING** is a person of the age of majority. At all relevant times, Rosing was a resident of Orleans Parish, Louisiana. Rosing is no longer an employee of KAOH, as defined in 29 U.S.C. § 201 *et seq*, working previously as a Social Media Assistant for KAOH from approximately March 2, 2020 to June 30, 2022 remotely from her home in Louisiana.

    5.     The putative class is comprised of ROSING and all other persons whom KAOH employs or employed as office staff/personnel in the United States that were subject to KAOH's policy of failing to properly compensate for all hours worked and the corresponding overtime pay (the "Putative Class").

## INTRODUCTION

6. Rosing and the Putative Class seeks declaratory relief and monetary damages for KAOH and Individual KAOH's willful violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et. seq.* (the "FLSA") for engaging in an illegal scheme to avoid paying minimum wage for all compensable hours worked and for overtime pay to its non-exempt office personnel.

## JURISDICTION AND VENUE

7. The FLSA, in relevant part, authorizes court actions by private parties to recover damages for violation of the FLSA'a overtime provisions. Jurisdiction is conferred on this court by Section 16(b) of the FLSA, 29 U.S.C. 216(b), and 28 U.S.C. §§ 1331 and 1337.

8. Venue is proper in Eastern District of Missouri pursuant to 28 U.S.C. §§ 1391(b) and because KAOH does business in this judicial district and the unlawful conduct giving rise to the claims occurred in this judicial district.

9. At all relevant times, KAOH, O'NEIL and HUGG and have been an "employer" within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all relevant times KAOH has been an "enterprise" within the meaning of § 3(r) of the FLSA, 29 U.S.C. §2003(r).

11. At all relevant times, KAOH has engaged in commerce within the meaning of 29 U.S.C. §203(s)(1) because it has employees engaged in commerce.  Further, KAOH has had, and continues to have, an annual gross income of sales made or business done of not less than $500,000.

12. At all relevant times, Rosing and the Putative Class were employees who were engaged in commerce or in the productions of goods for commerce as required by 29 U.S.C. §206-207.

## FACTS

13. KAOH is a marketing company that provides marketing and public relations services to its clients.

14. At all times material hereto, Rosing and the Putative Class were hired by KAOH as personnel to perform the work relating to the marketing services that KAOH rendered to its clients.

15. KAOH treated Rosing and the Putative Class, as independent contractors that were paid a set amount on a bi-weekly basis, without regard to the number of hours they worked.

16. KAOH maintained control over Rosing and the Putative Class while working for KAOH by: (i) supervising the work of Rosing and the Putative Class, (ii) controlling the hours during which Rosing and the Putative Class worked, (iii) establishing the employment policies that applied to Rosing and the Putative Class, (iv) controlling how, when, and how much Rosing and the Putative Class were to be paid. Defendant and Individual Defendants benefited financially from the work Rosing and the Putative Class performed while working for KAOH. As employer of the Rosing and the Putative Class, KAOH and the Individual Defendants are responsible for compliance with all of the applicable provisions of the FLSA, as provided in 29 C.F.R. § 791.2(a) and (b).

17. Neither Rosing nor the Putative Class exercised discretion and independent judgement in the performance of their job duties.

18. Rosing and the Putative Class provided KAOH's goods or services to KAOH's clients and therefore are not exempt administrative employees as defined in the FLSA.

19. The job duties of Rosing and the Putative Class did not require invention, imagination, originality, or talent, rather the work primarily depended on intelligence, diligence and accuracy. For example, the content Rosing developed was in strict conformance with the KAOH client's brand guidelines and other specifications provided to her by KAOH and or KAOH's client. Therefore, neither Rosing nor the Putative Class are exempt from the FLSA as creative professionals.

20. At all relevant times, Rosing and the Putative Class received no overtime compensation from KAOH despite regularly working hours in excess of 40 hours per week.

21. KAOH's misclassification of Rosing and the Putative Class as independent contractors or exempt employees was designed to deny Rosing and the Putative Class their fundamental rights as nonexempt employees entitled to receive overtime wages to the detriment of KAOH's profits, from which Hugg and O'Neill benefited financially.

22. KAOH employed guidelines and rules dictating the way in which Rosing and the Putative Class were to conduct themselves while working for KAOH. Defendant set the hours of operation, the number of hours per week Rosing and the Putative Class was required to work, and all other terms and conditions of employment.

23. KAOH required that Rosing and the Putative Class work 40 hours each week and regularly gave projects and tasks that required completion in excess of a 40 hour a week schedule.

11

24. Rosing and the Putative Class did not exercise the business skills necessary to elevate their status to that of an independence contractor or exempt employee.

25. Rosing owned no enterprise and worked for no other employers during her time employed at KAOH.

26. Rosing and the Putative Class did not exert control over a meaningful part of KAOH's business and did not stand as a separate economic entity from KAOH. KAOH exercised control over all aspects of the working relationship between Rosing and the Putative Class, KAOH and KAOH's clients.

27. KAOH had complete control over the conditions through which Rosing and the Putative Class were inextricably linked to KAOH. Rosing and the Putative Class were completely dependent on KAOH for her earnings.

28. KAOH controlled all procurement of clients and work assignments without which the Rosing and the Putative Class could not survive economically. Rosing and the Putative Class had no control over the client procurement process while working for KAOH, nor was they allowed to accept or reject discreet projects.

29. KAOH created and controlled the client pool, client development and assignments of clients at KAOH, the existence of which dictated the flow of assignment of work to Rosing and the Putative Class by KAOH.

30. Rosing and the Putative Class could not actively participate in any effort to increase the client base or establish contracting possibilities different from KAOH's client base because KAOH monopolized so much of working time.

31. Rosing and the Putative Class was not permitted to hire or subcontract other qualified individuals to provide additional services to KAOH or its clients, as an independent contractor in business for themselves would.

12

32. KAOH dictated the requirements for hardware and software used by the Rosing and the Putative Class, and additionally required the installation of remote access software onto computer, allowing KAOH to treat Rosing's computer and the computers of the Putative Class as its own.

33. KAOH managed all aspects of the business operation, including establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff. KAOH took the true business risks.

34. Neither Rosing nor the Putative Class controlled the key determinants of profit and loss of KAOH's enterprise or her own. Specifically, the Rosing and the Putative Class were not responsible for any aspect of KAOH's on-going business risk. KAOH, as opposed to Rosing or the Putative Class, was responsible for all financing, the payment of wages, and obtaining all appropriate business insurance and licenses.

35. Neither Rosing nor the Putative Class shouldered risk of loss. KAOH and HUGG and O'NEILL shouldered the risk of loss.

36. Rosing and the Putative Class were essential to the success of KAOH. The continued success of KAOH depends to an appreciable degree upon her production of work for its clients. In fact, the primary reason KAOH exists is to provide multi-media services to its clients, including social media posting and public relations.

37. Upon information and belief, all KAOH's actions were willful and not the result of mistake or inadvertence. KAOH was aware that the FLSA applied to its operation of KAOH at all relevant times. KAOH chose to continue to misclassify the Rosing and the Putative Class and withhold payment of overtime wages to enhance its profits.

38. KAOH hired a replacement for Rosing who is classified as an employee of KAOH, and not as an independent contractor. Additionally, during Rosing's employment

with KAOH, two of the four other social media content providers were misclassified as exempt employees.

39. In the event KAOH's actions were not willful, Rosing and the Putative Class alleges in the alternative that KAOH's actions were negligent.

40. Rosing and the Putative Class have suffered injury, incurred damage, and financial loss because of KAOH's conduct complained of herein.

## CLASS ALLEGATIONS

41. Rosing brings this action individually and as a collective action pursuant to 29 U.S.C. § 216(b). All requirements of 29 U.S.C. § 216(b) are satisfied.

42. The class of employees on behalf of whom Rosing brings this collective action is similarly situated in law and fact. The former and current employees or independent contractors are similarly situated to Rosing because, inter alia, are/were designated as independent contractors or nonexempt employees, worked and/or controlled by the same management, had/have the same or similar job duties wherever located, worked under similar payroll policies and procedures, worked pursuant to the same general compensation arrangements and are/were subject to the same illegal overtime scheme of intentionally refusing to pay for all hours actually worked and overtime compensation.

43. The number and identity of other Putative Class members yet to opt-in and consent to be party may be determined from the records of KAOH, and potential Putative Class members may easily and quickly be notified of the pendency of this action.

44. Rosing can and will fairly and adequately represent the interest of other opt in persons.

45. These similarly situated employees should be notified of, and allowed to opt in to, this action pursuant to 29 U.S.C. §216(b) for purposes of adjudicating their claims.

46. The relevant period dates back three years from the date on which this Petition was filed and continues forward through the date of judgment. In the event the Court finds that KAOH's actions were not willful, then the relevant time period is two years from the date on which this Petition was filed and continues forward through the date of judgment.

47. Rosing and the undersigned counsel are adequate representatives of the Putative Class. Rosing is a member of the Putative Class. Given Rosing's losses, she has an incentive to represent the Putative Class and is committed to the prosecution of this action for the benefit of the Putative Class. Rosing has no interests that are antagonistic to those of the Putative Class nor that would cause her to act adversely to the best interests of the Putative Class. Rosing has retained counsel experienced in class action litigation, including wage and hour disputes.

48. Prosecution of separate actions by individual members of the Putative Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Putative Class, which would establish incompatible standards of conduct for KAOH.

49. KAOH has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate for all members of the Putative Class that choose to opt into the collective action. The challenged practices are ongoing and KAOH continues to refuse to comply with the law.

50. Questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class. A collective action is superior to other methods for the fair and equitable adjudication of this action.

## COUNT ONE

## VIOLATIONS OF THE FLSA

## (MISCLASSIFICATION AND FAILURE TO PAY OVERTIME)

51. Rosing and the member of the Putative Class repeat, reiterate, and reallege each and every allegation hereinabove, as applicable, with the same force and effect as though the same was herein set forth at length.

52. Rosing and the Putative Class worked more than 40 hours per week; however, KAOH has failed to pay overtime wages as set forth in 29 U.S.C. § 207.

53. KAOH failed to pay Rosing and the members of the Putative Class overtime wages throughout the relevant time because KAOH willfully misclassified Rosing and the Putative Class as independent contractors or exempt employees. Furthermore, Rosing and the Putative Class worked as nonexempt employees and were willfully denied overtime pay by KAOH although they often worked more than forty hours per week.

54. KAOH failed to furnish Rosing and the Putative Class comprehensive statements showing the hours worked and the wages received during any pay period in the relevant time as required by FLSA and the promulgated regulations.

55. Based on the foregoing, Rosing and the Putative Class seek unpaid overtime wages at the required legal rate for all working hours more than 40 hours per week during the relevant time, liquidated damages, prejudgment interest, attorney's fees and costs and all other costs and penalties allowed by law.

**PRAYER FOR RELIEF ON COUNTERCOMPLAINT**

WHEREFORE, ROSING, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED PERSONS, REQUESTS THAT THIS HONORABLE COURT:

1. Judicially recognize this proceeding as a collective action pursuant to § 216(b) of the FLSA and, thereby require KAOH and the Individual Defendants to provide Rosing with the names and addresses of all potential opt-in collective action members who have been employed by KAOH from November 1, 2019 through the present, within the United States;

2. Approve and authorize the dissemination of notice to all potential collective action members advising them of the nature of this claim and their right to opt in to this lawsuit;

3. After due proceedings had and the lapse of all legal delays, there be judgment herein in favor of Rosing and the Putative Class against KAOH Media Enterprises LLC, Kelly O'Neill and Allan Hug, individually and *in solido*, for such unpaid overtime pay for all compensable hours actually worked, liquidated damages, attorneys fees and costs as allowed by Section 216 (b) of the FLSA, prejudgment and post-judgement interest as provided by law.

4. Enjoins KAOH its agents, employees, and successors, including Kelly O'Neill and Allan Hug and all other persons in active concert or participation with KAOH, from:

    (a) classifying members of the Putative Class as independent contractors or exempt employees instead of as nonexempt employees;

    (b) failing to pay members of the Putative Class overtime wages as required under the FLSA;

    (c)    failing to provide the Putative Class with comprehensive statements showing the hours that they worked and the wages they received.

5. For damages, general and specific;

6. For liquidated damages;

7. For penalties and exemplary damages;

8. For costs of suit;

9. For reasonable attorneys' fees;

10. For such other and further relief that the Court may deem just and proper.

## JURY TRIAL DEMANDED

PLEASE TAKE NOTICE THAT Defendant and Counterclaimant, on behalf of herself and all others similarly situated, hereby demands a trial by jury.

Respectfully submitted,

November 22, 2022

*/s/ Alicia J Dearn*
Alicia I. Dearn, Mo Bar No. 64623
7253 Watson Rd PMB 1164
St. Louis, Missouri 63119
O: (314) 887-1100
F: (314) 887-1101
alicia@dearnlaw.com

Counsel for Plaintiff and Counterclaimant
Olivia Rosing and all others similarly situated

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing ANSWER TO PETITION AND COUNTERCLAIM was served via the Court's electronic filing system on the following:

Aaron E. Schwartz
Kelley F. Farrell
8182 Maryland Avenue, Floor 15
St. Louis, Missouri 63105
*schwartz@capessokol.com*
*farrell@capessokol.com*

Attorneys for KAOH Media Enterprises, LLC

                                              s//Alicia I. Dearn              .